UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――― x
ROBERT E. MILLER, Individually and on     :     Civil Action No.
Behalf of All Others Similarly Situated,    :
                                            :
                                            :     CLASS ACTION
                         Plaintiff,         :
                                            :
            vs.                             :     COMPLAINT FOR VIOLATIONS OF THE
                                            :     FEDERAL SECURITIES LAWS
                                            :
LONGFIN CORP. and VENKATA S.                :
MEENAVALLI,                                 :
                                            :
                         Defendants.        :
                                            :
―――――――――――――――――――――――― x     DEMAND FOR JURY TRIAL

Plaintiff Robert E. Miller ("plaintiff"), individually and on behalf of all other persons similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Longfin Corp. ("Longfin" or the "Company"), as well as Company press releases and media and analyst reports about the Company.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all purchasers of Longfin Class A common stock from December 15, 2017 through April 2, 2018, both dates inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "1934 Act").

2.      Longfin is a finance and technology ("fintech") company which purportedly provides trade and physical commodities solutions for finance businesses and trading platforms.  In December 2017, Longfin went public through Regulation A+ ("Reg A+") of the Jumpstart Our Business Startups Act of 2012 ("JOBS Act").  Under Reg A+ issuers can raise up to $50 million from investors through "public solicitation" without having to register the offering with SEC or state regulators.

3.      Shortly after going public, Longfin announced that it was buying Ziddu.com ("Ziddu") to enable global trade through the use of blockchain technology.  The Company purchased Ziddu from an affiliate of its Chief Executive Officer ("CEO") and Chairman, Venkata S. Meenavalli, in exchange for 2.5 million Longfin Class A common shares.  On the news, the price of Longfin Class A shares jumped more than 1,200% in two days.  The Company posted articles on its

website highlighting the share price increase, such as "Longfin Corp (LFIN) Stock Skyrockets on Blockchain Deal," which described the "major acquisition" as sending "the company's stock price gangbusters."

4.      On January 23, 2018, Longfin issued a press release entitled "Multibillion Dollar Fund to Invest $52.7 million into Longfin Corp."  The release quoted defendant Meenavalli as stating: "'We are confident in our goal of reaching a 250% revenue growth rate organically, and outnumbering our growth rate in 2017.'"  He continued: "'This funding will also help Longfin in its acquisition endeavors within the Blockchain powered Smart Contracts and FinTech space across the globe . . . .'"

5.      Effective March 16, 2018, Longfin was added to two widely tracked stock indices, the Russell 2000 Index and the Russell 3000 Index (the "Russell Indices").  In a press release discussing the Company's inclusion in these indices, defendant Meenavalli stated: "'We believe that this inclusion reflects the stockholder value we are building and will help increase Longfin's visibility within the investment community.'"

6.      Throughout the Class Period, defendants made materially false and misleading statements and failed to disclose that: (i) Longfin had misrepresented the location of its primary offices and the identity of key employees in its public statements; (ii) Longfin had numerous material weaknesses in its operations and internal controls over financial reporting; (iii) Longfin was ineligible for inclusion in the Russell Indices; and (iv) as a result of the foregoing, defendants' statements were materially false and misleading at all relevant times.

7.      Then, on March 26, 2018, noted market commentator Citron Research ("Citron") posted a tweet on Twitter.com accusing the Company of inaccuracies in its financial reporting and fraud.  The same day, FTSE Russell ("Russell") issued a statement announcing that Longfin would

be removed from its global indices after market close on March 28, 2018, approximately 12 days after being added.

8.      On April 2, 2018, Longfin filed its annual report on Form 10-K for its 2017 fiscal year.  The filing revealed that the Company was subject to an SEC investigation (which ultimately led to a Court-imposed freeze on $27 million in illicit trading proceeds), suffered from a multitude of material weaknesses in its internal controls over financial reporting, and may not be able to continue as a going concern.

9.      The foregoing events caused the price of the Company's stock to decline from $71.10 per share on March 23, 2018, to close at $9.89 per share on April 3, 2018, a decline of more than 86%.

10.     As a result of the fraudulent conduct alleged herein, plaintiff and other members of the Class (as defined below) purchased Longfin Class A common stock at artificially inflated prices and have been damaged thereby.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder by the SEC.

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act.

13.     Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b).  The Company is headquartered in this District, its Class A common stock trades on the NASDAQ Capital Market ("NASDAQ") in this District, and many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

14.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the NASDAQ, a national securities exchange.

## PARTIES

15.     Plaintiff Robert E. Miller purchased Longfin Class A common stock during the Class Period, as set forth in the certification attached hereto and incorporated by reference, and was damaged thereby.

16.     Defendant Longfin is a Delaware company with its principal offices located in New York, New York.  The Company's Class A common stock trades on the NASDAQ under the ticker symbol "LFIN."

17.     Defendant Venkata S. Meenavalli ("Meenavalli") has served at all relevant times as Chairman of the Board and CEO of the Company.

18.     Defendant Meenavalli, because of his positions with the Company, possessed the power and authority to control the contents of Longfin's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  He was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of his positions with the Company and his access to material non-public information available to him but not to the public, defendant Meenavalli knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  Defendant Meenavalli is liable for the false and misleading statements pleaded herein.

- 4 -

19.     Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Longfin.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Longfin Class A common stock was a success, as it: (i) deceived the investing public regarding Longfin's prospects and business; (ii) artificially inflated the prices of Longfin Class A common stock; and (iii) caused plaintiff and other members of the Class to purchase Longfin shares at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

20.     Longfin is a fintech company.  The Company provides trade finance solutions and physical commodities finance solutions for finance houses and trading platforms for North America, South America and African regions.  Prior to going public, Longfin did not claim to be a blockchain company or to have expertise, assets or experience in the blockchain industry.

21.     The Class Period begins on December 15, 2017.  On that date, Longfin issued a press release entitled "Longfin Corp. Acquires Ziddu.com, A Blockchain-empowered Global Micro-lending Solutions Provider." The press release stated, in relevant part:

> Longfin Corp. (NASDAQ: LFIN), a leading global FinTech company, announces the acquisition of Ziddu.com, a Blockchain-empowered solutions provider that offers Microfinance Lending against Collateralized Warehouse Receipts in the form of Ziddu Coins.  Ziddu Coin is a smart contract that enables SME's, processors, manufacturers, importers and exporters using cryptocurrencies across continents. Ziddu Coins are loosely pegged to Ethereum and Bitcoin.  The importers/exporters convert offered Ziddu coins into Ethereum or Bitcoin and use the proceeds for their working capital needs.  At the end of the contract, importers/exporters will realize their proceeds and pay back their funds through cryptocurrencies only.  Depending upon the risk profile of the counterparty, the interest will vary from 12% to 48%.

> "The advent of Blockchain technology has caught the imagination of the global financial services industry; blockchain is emerging as a technological revolution that is set to disrupt the financial services infrastructure. Cryptocurrencies such as Bitcoin and Ethereum will act as a global financing currency to avail credit against hard currencies of many emerging markets," says Venkat Meenavalli, Chairman of Longfin Corp.

> **About Ziddu.com**

Ziddu.com is a blockchain-empowered global Micro-lending Solutions Provider. The company provides SEMs with Warehouse financing backed by their commodities in warehouses. Its warehouse financing leverages blockchain technology to finance through Ziddu coins and other cryptocurrencies such as Ethereum and Bitcoin against their collateralized warehouse receipts.

22.     In the following days, the price of Longfin stock increased from $5.39 per share on December 14, 2017, to close at $72.38 per share on December 18, 2017, an increase of **_more than 1,200%_** in just two trading days.

23.     On January 23, 2018, Longfin issued a press release entitled "Multibillion Dollar Fund to Invest $52.7 million into Longfin Corp." The press release stated, in relevant part:

> Longfin Corp. ("Longfin" or the "Company") (NASDAQ: LFIN) a leading global FinTech company, has announced that the Company has entered into a securities purchase agreement with a multibillion dollar fund. The institutional investor is investing $52,700,000 through convertible note instruments (the "Notes"). A press release regarding the transaction was previously issued prior to finalization of the documentation earlier today, and the Company is confirming the transaction is proceeding on the terms indicated below.
>
> Joseph Gunnar & Co., LLC is acting as placement agent.
>
> *         *         *
>
> **Key Transaction Details**
>
> The Notes consist of (i) Series A Senior Convertible Notes in the aggregate principal amount of $10,095,941.18 and (ii) Series B Senior Secured Convertible Notes in the aggregate principal amount of $42,604,058.82. The nature of the investment will involve (i) an upfront cash payment in the amount of $5,000,000, and (ii) secured promissory notes payable by the investors to the Company in the aggregate principal amount of $42,604,058.82 (referred to below as the "Investor Notes"). Under the Investor Notes, the Investors are required to prepay the Investor Notes to the Company in two equal installments following the registration of all of the shares underlying the Investor Notes and warrants issued together with the Investor Notes.
>
> Longfin is one of the few players in the global FinTech space in alternative finance and shadow banking, a $72 trillion industry worldwide.
>
> "***To secure funding from this large institutional investor at current market valuation will enhance the visibility and revenue growth of the company in a rapid way. We are confident in our goal of reaching a 250% revenue growth rate***

*organically, and outnumbering our growth rate in 2017.  This funding will also help Longfin in its acquisition endeavors within the Blockchain powered Smart Contracts and FinTech space across the globe," stated Venkat S. Meenavalli, Chairman and CEO of Longfin Corp*.

24.     Effective March 16, 2018, Russell added Longfin to the Russell Indices as part of its quarterly addition of companies with recent initial public offerings, thereby increasing investor demand for Longfin Class A common shares.

25.     On March 22, 2018, Longfin issued a press release entitled "Longfin Corp. Joins Russell 2000® Index and Russell 3000® Index."  The press release stated, in relevant part:

> Longfin Corp. ("Longfin" or the "Company") (LFIN), a global FinTech company, has announced that it has been added to the Russell 2000® Index and the Russell 3000® Index, effective March 16, 2018, as part of Russell's quarterly additions of companies with recent initial public offerings.
>
> Russell indices are widely used by investment managers and institutional investors for both index funds and as benchmarks for passive and active investment strategies in the U.S. marketplace.
>
> The Russell 3000® Index measures the performance of the largest 3,000 U.S. companies, representing approximately 98% of the investable U.S. equity market. The Russell 2000® Index measures performance of the small-cap segment of the U.S. equity market and is a subset of the Russell 3000® Index.
>
> ***Venkat S. Meenavalli, Chairman and CEO of Longfin, says "We are pleased that Longfin is included in the Russell 2000® Index.  We believe that this inclusion reflects the stockholder value we are building and will help increase Longfin's visibility within the investment community***."

26.     The statements referenced in ¶¶21, 23 and 25 above were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts which were known to defendants or recklessly disregarded by them as follows:

(a)     that Longfin had misrepresented material facts about its business and operations, including the extent of its capabilities at its New York offices and the identity and qualifications of key employees;

(b)     that Longfin had material weaknesses in its operations and internal controls over financial reporting;

(c)     that Longfin was ineligible for inclusion in the Russell Indices; and

(d)     that Longfin's lack of profitability had imperiled its ability to continue as a going concern.

27.     Then on March 26, 2018, stock commentator Citron posted the following tweet on Twitter.com accusing Longfin of fraud and inaccuracies in its public statements:



**Citron Research**
@CitronResearch

Follow

If you are fortunate enough to get a borrow, indeed $LFIN is a pure stock scheme. @sec_enforcement should not be far behind.  Filings and press releases are riddled with inaccuracies and fraud.

6:44 AM - 26 Mar 2018

28.     As a result of these disclosures, the price of the Company's Class A common stock declined from $71.10 per share on March 23, 2018 to close at $59.28 per share on March 26, 2018, the next trading day, a decline of over 16%, on abnormally high share trading volume.

29.     On March 26, 2018, Russell issued a statement, entitled "Longfin Corp (USA): Constituent Deletion Changes in Russell Global Index Series," stating:

> Longfin (USA, constituent) was included as an IPO in the Russell 2000 index at the March quarterly update on the basis of its IPO filing of 3 November 2017 which stated that up to 10,000,000 Class A common shares would be offered. Subsequently, an SEC filing published on 13 February 2018, immediately prior to the Russell US Index rank date of 14 February 2018 for the quarterly IPO additions, confirmed that up to a maximum of 1,140,000 of the shares offered had been taken up by the public.  Consequently FTSE Russell has determined that Longfin failed to meet the minimum 5% free float requirement as at the 14 February rank date.  In

accordance with the FTSE Russell Recalculation Policy and Guidelines, Longfin will therefore be removed from the Russell Indexes on 28 March 2018 (after the close).

30.     As a result of these disclosures, the price of the Company's Class A common stock declined from $59.28 per share on March 26, 2018 to close at $34.68 per share on March 27, 2018, a decline of more than 41%, on abnormally large volume.

31.     On March 27, 2018, *CNBC* published an article entitled "Longfin loses more than a third of its value after the controversial cryptocurrency stock is booted from the Russell 2000 index." In the article, defendant Meenavalli stated that Longfin would be taking "'legal action'" against Citron for its negative comments.

32.     As a result of these disclosures, the price of the Company's Class A common stock declined from $34.68 per share on March 27, 2018 to close at $17.26 per share on March 29, 2018, a decline of more than 50%, on abnormally large volume.

33.     On April 2, 2018, after the close of trading, Longfin filed its 2017 annual report on Form 10-K with the SEC ("2017 Form 10-K"). The 2017 Form 10-K revealed, among other things, that Longfin: (i) had material weakness in its internal control over financial reporting; (ii) was the subject of an SEC investigation concerning its IPO and the acquisition of Ziddu; and (iii) may not be able to continue as a going concern. The 2017 Form 10-K stated in pertinent part:

> ***We have identified several material weaknesses in our internal control over financial reporting. If our planned remediation of these material weaknesses is not effective, or if we experience additional material weaknesses in the future or otherwise fail to maintain an effective system of internal control over financial reporting in the future, we may not be able to accurately or timely report our financial condition or results of operations, which may adversely affect investor confidence in us and, as a result, the value of our securities***.
>
> In connection with the audit of our financial statements beginning on page F-1, the Company identified several material weaknesses in its internal control over financial reporting. A material weakness is defined as a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's financial

statements will not be prevented or detected on a timely basis. Below are the material weaknesses identified:

- the Company lacks qualified personnel who fully understand GAAP reporting requirements, possess appropriate skills to identify and determine proper accounting for new, complex or unusual transactions or have a proficiency in the SEC reporting environment;

- the Company did not maintain sufficient personnel with the technical knowledge and skills to perform accounting functions for complex/non-recurring transactions and financial reporting functions;

- the Company exhibited an overall lack of sufficient knowledge, organized and sufficient audit support, documented positions and assessments, and policies/procedures related to the accounting treatment for both complex and non-complex transactions;

- certain segregation of duties issues exist (*i.e.*, the same person performs the process and the control in certain areas);

- the Company does not have any formal or documented accounting policies and procedures, including with respect to intangible assets and monitoring related parties;

- senior financial reporting personnel have the ability to make journal entries; and

- there is no formal review process around journal entries recorded.

Neither we nor our independent registered public accounting firm has performed an evaluation of our internal control over financial reporting in accordance with Section 404 of the Sarbanes-Oxley Act. In light of the material weaknesses that were identified, we believe that it is possible that additional material weaknesses and control deficiencies may have been identified if such an evaluation had been performed.

The Company is working to remediate the material weaknesses, has taken steps to enhance the internal control environment, and plans to take additional steps to remediate the material weaknesses. Specifically, we will:

- seek technically competent staff with appropriate experience applying GAAP accounting guidance and are currently utilizing a consultant with US GAAP/SEC experience to assist with financial reporting requirements;

- design additional controls around identification, documentation and application of technical accounting guidance;

- implement additional internal reporting procedures, including those designed to add depth to the review processes and improve segregation of duties; and

- restructur[e] internal controls to eliminate or improve known control issues.

The actions that we are taking are subject to ongoing senior management review as well as audit committee oversight.  Although we plan to complete this remediation process as quickly as possible, we cannot at this time estimate how long it will take, and our efforts may not be successful in remediating these material weaknesses.  In addition, we will incur additional costs in improving our internal control over financial reporting.  If we are unable to successfully remediate these material weaknesses or if we identify additional material weaknesses, we may not detect errors on a timely basis.  This could harm our operating results, cause us to fail to meet our SEC reporting obligations or NASDAQ Capital Market listing requirements on a timely basis, adversely affect our reputation, cause our stock price to decline or result in inaccurate financial reporting or material misstatements in our annual or interim financial statements.

In addition to the remediation efforts related to the material weaknesses described above, we are in the process of designing and implementing the internal control over financial reporting required to comply with Section 404 of the Sarbanes Oxley Act.  This process will be time consuming, costly and complicated.  If during the evaluation and testing process, we identify one or more other material weaknesses in our internal control over financial reporting, our management will be unable to assert that our internal control over financial reporting is effective.  Even if our management concludes that our internal control over financial reporting is effective, our independent registered public accounting firm may conclude that there are material weaknesses with respect to our internal controls or the level at which our internal controls are documented, designed, implemented or reviewed.  If we are unable to assert that our internal control over financial reporting is effective, or when required in the future, if our independent registered public accounting firm is unable to express an opinion as to the effectiveness of our internal control over financial reporting, investors may lose confidence in the accuracy and completeness of our financial reports and the market price of our securities could be adversely affected, and we could become subject to investigations by the stock exchange on which our securities are listed, the SEC, or other regulatory authorities, which could require additional financial and management resources.

*        *        *

**Going Concern**

The Company has limited operating history and experienced a net loss of $26.4 million since its inception.  The Company has $2.1 million of cash at December 31, 2017.  The Company operates primarily in structured trade finance and providing technology services and our operating costs are primarily related to the

cost of providing those services, employee compensation and administrative expenses.

On January 22, 2018, pursuant to a Securities Purchase Agreement ("SPA") entered into by an institutional investor (the "Investor"), the Company agreed to sell and issue (1) (i) Senior Convertible Notes to the Investor in the aggregate principal amount of $52,700,000 (each, a "Note" and collectively, the "Notes"), consisting of a Series A Note in the principal amount of $10,095,941 and (ii) a Series B Note in the principal amount of $42,604,059, and (2) a warrant to purchase 751,894 shares of Longfin Class A Common Stock, exercisable for a period of five years at an exercise price of $38.55 per share (the "Warrant"), for consideration consisting of (i) a cash payment of $5,000,000, and (ii) a secured promissory note payable by the Investor to Longfin (the "Investor Note") in the principal amount of $42,604,059 (collectively, the "Financing"). On February 13, 2018, the Company completed the Financing and related sale and issuance of the Notes, the Warrant and a placement agent warrant. The maturity date of the Notes is August 13, 2019 and the Investor Note is February 13, 2048. To date, the Company has received $3.7 million in net proceeds ($5.0 million net of costs of $1.3 million) related to the Financing and will not be able to obtain additional monies through the Financing until the Company files a Registration Statement to register the common shares underlying the Notes and Warrant and such Registration Statement is declared effective by the Securities and Exchange Commission or such shares are eligible for resale pursuant to Rule 144 under the Securities Act, or the investor elects to convert or exercise such securities notwithstanding the underlying shares have not been so registered or are then so eligible.

*The continuation of the Company as a going concern is dependent upon the ability of the Company to obtain the monies from the Financing and the attainment of profitable operations*. These factors, which are not within the Company's control, raise substantial doubt regarding the Company's ability to continue as a going concern. Although it is actively working on obtaining the additional funding pursuant to the Financing, the Company cannot make any assurances that the additional monies will be available to it and, if available, on a timely basis. If the Company is unable to obtain the monies from the Financing, it would negatively impact its business and operations and could also lead to the reduction or suspension of the Company's operations and ultimately force the Company to cease operations. These financial statements do not include any adjustments to the recoverability and classification of recorded asset amounts and classification of liabilities that might be necessary should the Company be unable to continue as a going concern.

\*       \*       \*

*Legal Matters*

The Company is and may become subject to certain legal proceedings and claims arising in connection with the normal course of its business. In the opinion of

management, there are currently no claims that would have a material adverse effect on its consolidated financial position, results of operations or cash flows.

On March 5, 2018, the Division of Enforcement of the SEC informed the Company that it is conducting an investigation *In the Matter of Trading in the Securities of Longfin Corp.* and requested that the Company provide certain documents in connection with its investigation, including documents related to our IPO and other financings and the acquisition of Ziddu.com. The Company is in the process of responding to this document request and will cooperate with the SEC in connection with its investigation. While the SEC is trying to determine whether there have been any violations of the federal securities laws, the investigation does not mean that the SEC has concluded that anyone has violated the law. Also, the investigation does not mean that the SEC has a negative opinion of any person, entity or security.

34. Also on April 2, 2018, *The Wall Street Journal* published an article, entitled "Up-and-Down IPO Longfin Is Facing an SEC Probe," regarding the Company's myriad problems. The article stated that Longfin had "failed to disclose important information and left a trail of misstatements behind," which had sparked the SEC investigation. The article also revealed that Longfin had misrepresented numerous facts in its financial filings, including the identity of key employees, the extent of its operations at its downtown Manhattan principal offices, and even defendant Meenavalli's age.

35. As a result of these disclosures, the price of the Company's Class A common stock declined from $14.31 per share on April 2, 2018 to close at $9.89 per share on April 3, 2018, a decline of more than 30%, on abnormally large trading volume.

36. Subsequently, on April 6, 2018, the SEC announced that it had obtained a court order freezing more than $27 million in trading proceeds from allegedly illegal distributions and sales of restricted shares of Longfin stock involving the Company, its CEO, and three other affiliated individuals. The press release stated in pertinent part:

According to a complaint unsealed today in federal court in Manhattan, shortly after Longfin began trading on NASDAQ and announced the acquisition of a purported cryptocurrency business, its stock price rose dramatically and its market capitalization exceeded $3 billion. The SEC alleges that Amro Izzelden "Andy"

Altahawi, Dorababu Penumarthi, and Suresh Tammineedi then illegally sold large blocks of their restricted Longfin shares to the public while the stock price was highly elevated. Through their sales, Altahawi, Penumarthi, and Tammineedi collectively reaped more than $27 million in profits.

According to the SEC's complaint, Longfin's founding CEO and controlling shareholder, Venkata Meenavalli, caused the company to issue more than two million unregistered, restricted shares to Altahawi, who was the corporate secretary and a director of Longfin, and tens of thousands of restricted shares to two other affiliated individuals, Penumarthi and Tammineedi, who were allegedly acting as nominees for Meenavalli. The subsequent sales of those restricted shares violated federal securities laws that restrict trading in unregistered shares distributed to company affiliates.

"We acted quickly to prevent more than $27 million in alleged illicit trading profits from being transferred out of the country," said Robert Cohen, Chief of the SEC Enforcement Division's Cyber Unit. "Preventing defendants from transferring this money offshore will ensure that these funds remain available as the case continues."

The SEC's complaint, which was filed under seal on April 4, charges Longfin, Meenavalli, Altahawi, Penumarthi, and Tammineedi with violating Section 5 of the Securities Act of 1933. The complaint seeks injunctive relief, disgorgement of ill-gotten gains, and penalties, among other relief.

37.     As a result of this series of disclosures, the price of Longfin Class A common stock dropped ***more than 86%*** from its Class Period high, causing economic losses and damages under the federal securities laws to plaintiff and the Class.

## LOSS CAUSATION AND ECONOMIC LOSS

38.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Longfin Class A common stock and operated as a fraud or deceit on purchasers of Longfin Class A common stock. As detailed above, when the truth about Longfin's misconduct was revealed, the value of the Company's stock declined precipitously as the prior artificial inflation no longer propped up the stock's price. The declines in Longfin's stock price were the direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the share price declines negate any inference that the loss suffered by plaintiff and other members of

the Class was caused by changed market conditions, macroeconomic or industry factors or Company specific facts unrelated to the defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by plaintiff and other Class members, was a direct result of defendants' fraudulent scheme to artificially inflate the price of the Company's stock and the subsequent significant decline in the value of the Company's stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

39.     At all relevant times, defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Longfin's business, operations and financial condition, as alleged herein. Throughout the Class Period, defendants issued materially false and misleading statements and omitted material facts necessary to make their statements not false or misleading, causing the price of Longfin Class A common stock to be artificially inflated. Plaintiff and other Class members purchased Longfin Class A common stock at those artificially inflated prices, causing them to suffer damages as complained of herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**

40.     At all relevant times, the market for Longfin Class A common stock was an efficient market for the following reasons, among others:

(a)     Longfin Class A common stock met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     according to the Company's Form 10-K filed April 2, 2018, the Company had approximately 44.5 million Class A shares outstanding as of March 29, 2018, demonstrating a very active and broad market for Longfin Class A shares;

(c)     as a regulated issuer, Longfin filed periodic public reports with the SEC;

(d)     Longfin regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services, the Internet and other wide-ranging public disclosures; and

(e)     unexpected material news about Longfin was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

41.     As a result of the foregoing, the market for Longfin Class A common stock promptly digested current information regarding Longfin from publicly available sources and reflected such information in Longfin's stock price.  Under these circumstances, all purchasers of Longfin Class A common stock during the Class Period suffered similar injury through their purchase of Longfin shares at artificially inflated prices, and a presumption of reliance applies.

NO SAFE HARBOR

42.     Defendants' false or misleading statements during the Class Period were not forward-looking statements ("FLS"), or were not identified as such by defendants, and thus did not fall within any "Safe Harbor."

43.     Longfin's verbal "Safe Harbor" warnings accompanying its oral FLS issued during the Class Period were ineffective to shield those statements from liability.

44.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Longfin who knew that the FLS was false. Further, none of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action on behalf of all purchasers of Longfin Class A common stock during the Class Period and were damaged thereby (the "Class").  Excluded from the Class are the defendants and their immediate families, the officers and directors of the Company and their immediate families, their legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest.

46.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Longfin Class A common stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Longfin or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.  These shares are held by hundreds or thousands of individuals located geographically throughout the country.  Joinder would be highly impracticable.

47.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of the federal laws complained of herein.

48.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

49.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether defendants acted knowingly or recklessly in issuing false and misleading statements;

(c)     whether the price of Longfin Class A common stock during the Class Period was artificially inflated because of defendants' conduct complained of herein; and

(d)     whether the members of the Class have sustained damages and, if so, the proper measure of damages.

50.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

51.     Plaintiff incorporates the foregoing paragraphs by reference.

52.     During the Class Period, defendants disseminated or approved the false or misleading statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

53.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Longfin Class A common stock during the Class Period.

54.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Longfin Class A common stock.  Plaintiff and the Class would not have purchased Longfin stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

55.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Longfin Class A common stock during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

56.     Plaintiff incorporates the foregoing paragraphs by reference.

57.     During the Class Period, defendants acted as controlling persons of Longfin within the meaning of §20(a) of the 1934 Act.  By virtue of his positions and his power to control public statements about Longfin, defendant Meenavalli had the power and ability to control the actions of Longfin and its employees.  Longfin controlled Meenavalli and its other officers and employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead

Plaintiff and certifying plaintiff as class representative under Rule 23 of the Federal Rules of Civil

Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding plaintiff and the members of the Class damages and interest;

C.      Awarding plaintiff's reasonable costs, including attorneys' fees; and

D.      Awarding such equitable/injunctive or other relief as the Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  April 9, 2018                    ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                         SAMUEL H. RUDMAN


                                         _____
                                                    /s/ Samuel H. Rudman
                                              SAMUEL H. RUDMAN

                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)
                                         srudman@rgrdlaw.com

                                         ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                         DAVID C. WALTON
                                         BRIAN E. COCHRAN
                                         655 West Broadway, Suite 1900
                                         San Diego, CA  92101-8498
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)
                                         davew@rgrdlaw.com
                                         bcochran@rgrdlaw.com

HOLZER & HOLZER, LLC
COREY D. HOLZER
1200 Ashwood Parkway, Suite 410
Atlanta, GA  30338
Telephone:  770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com

Attorneys for Plaintiff

**CERTIFICATION OF NAMED PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
| --- | --- | --- | --- |
| LFIN | 12/18/2017 | 200 | $85.00 |
| | 01/03/2018 | 100 | $57.51 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
| --- | --- | --- | --- |
| LFIN | 12/21/2017 | 100 | $46.30 |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

None

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___9___ day of ___April___, 2018 in ___Sequim___, ___WA___.

City                    State

(Signature) X _____ Robert Evan Miller _____

AD93BFF30614422...

(Print Name) _____ Robert Evan Miller _____